United States District Court
Southern District of Texas

**ENTERED**

November 30, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA KEITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-15-1030 |
| METROPOLITAN LIFE INSURANCE | § | |
| COMPANY, CENTRAL BANK, and | § | |
| CENTRAL BANK WELFARE BENEFIT | § | |
| PLAN, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Linda Keith, has brought suit against defendants, Metropolitan Life Insurance Company ("MetLife"), Central Bank, and Central Bank Welfare Benefit Plan ("Central Bank defendants"), for breach of fiduciary duty and equitable relief in the form of insurance benefits owed on the life of John P. White under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq.  Pending before the court is Plaintiff's Motion for Leave Pursuant to Fed. R. Civ. P. 15(c)(1)(B) to File Plaintiff's First Amended Complaint (Docket Entry No. 22), which would add a claim for injunctive relief and penalties under 29 U.S.C. § 1132(c) against Central Bank.  For the reasons explained below, plaintiff's motion to amend will be denied.

## I.   Factual and Procedural Background

**A.   Factual Background[1]**

White served as Vice President of Central Bank for Business Development from 2007 until 2013.  While employed by Central Bank, White enrolled in a group insurance program offered by his employer that provided life, accidental death and dismemberment, and long-term disability insurance through policies issued by MetLife. Central Bank made premium payments for the group insurance policies as part of White's compensation.  Toward the end of his employment White was diagnosed with monoplegia and amyotrophic lateral sclerosis (ALS), commonly known as Lou Gehrig's Disease.  March 7, 2013, was White's last day at work.  On that date White began a leave of absence under the Family Medical Leave Act (FMLA).  During White's leave of absence Central Bank continued to make premium payments for White's group insurance coverages.

On March 17, 2013, White applied for long-term disability benefits under MetLife's policy.  On March 18, 2013, MetLife acknowledged receipt of White's disability application, requested additional information needed to perfect the claim, and advised White that he needed to apply for Social Security disability benefits.  On March 19, 2013, White wrote to Central Bank's human resources office reaffirming his desires (1) not to make any changes to his insurance elections for plan year 2013-2014, and

---

[1]See Statement of Facts, Original Complaint, Docket Entry No. 1, pp. 2-9 ¶¶ 8-42.

(2) to keep Keith as the beneficiary for his life insurance policy. On March 26, 2013, MetLife approved White's disability application and advised White that his benefits would begin on June 6, 2013, following a three-month elimination period.

On May 9, 2013, MetLife wrote a letter to White acknowledging receipt of an April 9, 2013, claim for continuation of group life insurance during his absence from work.  MetLife's May 9, 2013, letter acknowledged that the group life insurance plan "includes a provision that continues your coverage while your are not actively at work," advised White that a representative "may be in contact," and that "[n]o action is required from you at this time."  On May 21, 2013, MetLife wrote to White stating that his insurance plan required him to be totally disabled continuously for nine consecutive months before he would be eligible for continuation of group life insurance coverage during his absence from work.  The May 9, 2013, letter also stated that MetLife would defer making a decision on his claim for continuation of group life insurance until December 9, 2013, when the nine-month waiting period expired. Neither the May 9th nor the May 21st letter mentioned that there were other means of maintaining continuation of life insurance coverage, or that White was not qualified for continuation under the provision with the nine-month waiting period because he had not become totally disabled before reaching the age of 60.

White was formally terminated from his position with Central Bank at the end of his FMLA leave — on June 5 or June 15, 2013.

Central Bank made its last premium payment for White on June 1, 2013. Plaintiff alleges that neither Central Bank nor MetLife gave White any notice that premium payments on his group coverage would cease on June 1, 2013, that the July 1, 2013, payment was due or past due, or that White had a right to move or convert his life insurance coverage following his termination from Central Bank.

White died on September 14, 2013. Shortly after White's death, Keith contacted MetLife to advise them of White's passing and MetLife instructed her to submit a death claim. On November 25, 2013, MetLife denied Keith's claim for life insurance benefits. Keith timely appealed the denial of her claim. On May 1, 2014, MetLife denied Keith's appeal because White's coverage ended on June 30, 2013, following the last premium payment on June 1, 2013, and because White was not eligible for continuation of his insurance since he was 60 years old when he became disabled.

## B.   Procedural Background

Plaintiff filed her Original Complaint against defendants on April 21, 2015 (Docket Entry No. 1). The Central Bank defendants filed their Original Answer on June 15, 2015 (Docket Entry No. 6), and MetLife filed its Answer on June 19, 2015 (Docket Entry No. 7). On September 25, 2015, the court held an initial conference and issued a Docket Control Order (Docket Entry No. 13). In the spaces on the Docket Control Order for deadlines to file motions to amend the pleadings and add new parties, the court entered "N/A" for "not

applicable" because neither party expressed a need to amend the
pleadings.   The Docket Control Order required discovery to be
completed by September 30, 2016, and set Docket Call for
October 14, 2016.  On August 13, 2016, the parties filed a Joint
Motion to Modify Docket Control Order and Extend Deadlines (Docket
Entry No. 20).  On September 1, 2016, the court entered an Order
(Docket Entry No. 21) granting the parties' motion to modify and
amended the Docket Control Order to require discovery to be
completed by November 30, 2016, and Docket Call to be held on
February 10, 2017.

On September 19, 2016, plaintiff filed the pending motion for
leave to amend under Rule 15(c)(1)(B) (Docket Entry No. 22).
Rule 15(c)(1)(B) provides that

> [a]n amendment to a pleading relates back to the date of
> the original pleading when:  the amendment asserts a
> claim or defense that arose out of the conduct,
> transaction, or occurrence set out--or attempted to be
> set out--in the original pleading.

Asserting that the § 1132(c) claim for penalties that she seeks to
assert against Central Bank arises out of the claims for benefits
already asserted in her Original Complaint, plaintiff argues that
the § 1132(c) claim is timely because it relates back to the claims
in her Original Complaint.[2]

---

[2]Plaintiff's Motion for Leave Pursuant to Fed. R. Civ. P.
15(c)(1)(B) to File Plaintiff's First Amended Complaint
("Plaintiff's Motion for Leave to Amend"), Docket Entry No. 22,
p. 6.

## II.  <u>Standards of Review</u>

In cases for which the court has entered a scheduling order in compliance with Federal Rule of Civil Procedure 16, Federal Rule of Civil Procedure 15(a) provides the standard for motions to amend filed before expiration of the scheduling order's deadline for amendments, and Federal Rule of Civil Procedure 16(b) provides the standard for motions to amend filed after expiration of the scheduling order's deadline for amendments.  <u>See</u> Fed. R. Civ. P. 16(b)(3)(A) ("*Required Contents*.  The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.").  <u>See also</u> <u>Marathon Financial Ins., Inc., RRG v. Ford Motor Co.</u>, 591 F.3d 458, 470 (5th Cir. 2009) ("Federal Rule of Civil Procedure 16(b) governs amendment of pleadings after a scheduling order's deadline to amend has expired.") (citing <u>Fahim v. Marriott Hotel Services, Inc.</u>, 551 F.3d 344, 348 (5th Cir. 2008)).

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires."  "A decision to grant leave is within the discretion of the court, although if the court 'lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial.'"  <u>State of Louisiana v. Litton Mortgage Co.</u>, 50 F.3d 1298, 1302-03 (5th Cir. 1995) (quoting <u>Jamieson By and Through Jamieson v. Shaw</u>, 772 F.2d 1205, 1208 (5th Cir. 1985) (quoting <u>Conley v. Gibson</u>, 78 S. Ct. 99, 103 (1957)).  Rule 15(a)

-6-

provides "a strong presumption in favor of granting leave to amend." Financial Acquisition Partners LP v. Blackwell, 440 F.3d 278, 291 (5th Cir. 2006).   Nevertheless, "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 270 (5th Cir. 2010) (citing Foman v. Davis, 83 S. Ct. 227, 230 (1962)).

"Rule 16(b) provides that once a scheduling order has been entered, it 'may be modified only for good cause and with the judge's consent.'" Marathon, 591 F.3d at 470 (quoting Fed. R. Civ. P. 16(b)(4)).   "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"   S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright, et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).   "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply." Id. at 536.

### III.  Analysis

Plaintiff seeks leave to add a claim against Central Bank for statutory penalties under 29 U.S.C. § 1132(c) for "Central Bank's

failure to provide a statutorily required Summary Plan Description

[("SPD")]."[3]  Section 1132(c) provides in pertinent part that:

> (1)  Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c).  Asserting that 29 U.S.C. § 1024(b)(4) imposes

an obligation on Central Bank as Plan Administrator to furnish,

upon written request, a copy of the SPD, plaintiff alleges that she

submitted a written request for plan documents on January 14, 2014;

Central Bank failed to provide her the SPD within thirty (30) days;

and that § 1132(c)(1) therefore permits her to assert a claim for

statutory penalties against Central Bank.[4]

Asserting that plaintiff is not an aggrieved beneficiary,

defendants urge the court to deny plaintiff's motion to amend as

both untimely and futile.[5]

---

[3]Plaintiff's Reply to Responses to Plaintiff's Motion for Leave to File Amended Complaint ("Plaintiff's Reply"), Docket Entry No. 26, p. 1.

[4]See First Amended Complaint, attached to Plaintiff's Motion for Leave to Amend, Docket Entry No. 22-1, pp. 17-21, ¶¶ 70-98.

[5]Defendants Central Bank and Central Bank Welfare Plan's Response to Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint ("Central Bank Defendants' Response"), Docket
(continued...)

## A.   Rule 16(b)(4) Applies

The record before the court shows that plaintiff filed her Original Complaint on April 21, 2015 (Docket Entry No. 1), that the Central Bank defendants filed their Original Answer on June 15, 2015 (Docket Entry No. 6), that MetLife filed its Answer on June 19, 2015 (Docket Entry No. 7), and that the Rule 16 scheduling conference was held on September 25, 2015, at which time the court entered a scheduling order titled "Docket Control Order" (Docket Entry No. 13).   The Docket Control Order contained the notation "N/A" on the lines provided for deadlines to file motions to amend the pleadings and motions to add new parties.   See Breaux v. Tri Star Freight Systems, Inc., Civil Action No. H-16-846, 2016 WL 6581929, at *2 (S.D. Tex. November 7, 2016) ("The 'N/A' notation next to the amendment deadlines on the Scheduling Order indicates that, at the Rule 16 conference, the parties indicated that they would not need to amend their pleadings. . .").   The court's record also shows that the Docket Control Order was amended on September 1, 2016 (Docket Entry No. 21), but that amendment did not add a deadline for filing amending pleadings.   Nevertheless, plaintiff filed the pending motion for leave to amend on September 19, 2016.   Because the court has entered two scheduling

---

[5](...continued)
Entry No. 23, p. 1; Defendant MetLife's Response to Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint ("Defendant MetLife's Response"), Docket Entry No. 25, p. 8 ¶ 15 and p. 9 ¶ 16.

orders neither of which contained dates for filing motions to amend the pleadings and because Rule 16(b)(3) requires scheduling orders to limit the time to amend the pleadings, the court concludes that plaintiff must establish good cause to amend.  <u>See</u> Fed. R. Civ. P. 16(b)(4).

**B.   Plaintiff Fails to Establish Good Cause to Amend**

To determine whether a moving party has established good cause to amend courts consider four factors:  "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  <u>Marathon</u>, 591 F.3d at 470 (quoting <u>Southwestern Bell Telephone Co. v. City of El Paso</u>, 346 F.3d 541, 546 (5th Cir. 2003)).

1.   <u>Keith Has Provided No Reasonable Explanation for Delay</u>

Plaintiff's Motion for Leave to Amend states:

Keith made an Initial Request for Documents from Central Bank, the Plan Administrator of the Central Bank Welfare Plan, on January 14, 2014.

By operation of ERISA, Central Bank had thirty-(30) days to provide the requested documents — or February 13, 2014.  29 U.S.C. § 1132(c).

. . .

When Keith filed her Original Complaint, Keith complained that the lack of the summary plan description adversely affected Mr. White[']s post-termination

decision-making.  (Plaintiff's Original Complaint (Doc.
No. 1) ¶¶ 48 - 50).  However, Keith could not bring a
cause of action under 29 U.S.C. § 1132(c) since Central
Bank led Keith into believing that MetLife, the claim
administrator, was responsible for the drafting and
publication of the summary plan description.  Keith
recognized that most circuits have held that only the
Plan Administrator could be liable for penalties under 29
U.S.C. § 1132(c).  Keith had no desire to test whether
someone other than the statutory administrator could be
liable for § 502(c) penalties.  See *Fisher v.
Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir.
1990).  Keith also knew that "[a]s a penalty provision,
section 1132(c) must be strictly construed." *Fisher*, 895
F.2d at 1077[,] *citing Ivan Allen Co. v. United States*,
422 U.S. 617, 626-27, 95 S. Ct. 2501, 2506-07, 45 L.Ed.
2d 435 (1975).

. . .

As Keith has set out more fully in (Proposed)
Plaintiff's Amended Complaint, Keith alleges that Central
Bank failed to provide Keith the documents Keith
requested under 29 U.S.C. § 1024(b)(4).  As late as
April 23, 2014, Central Bank, through its counsel, led
Keith into believing that MetLife was the entity
responsible for drafting and publishing the summary plan
description of Central Bank Welfare Plan to . . . Keith.

Since a plan administrator may delegate the drafting
of the summary plan description to a third-party, Keith
had no reason to doubt that MetLife was responsible for
the drafting of the SPD.

Once both Defendants had furnished their disclosures
under FED. R. CIV. P. 26(a)(1) to Keith, then Keith was
certain that neither would furnish the summary plan
description to Keith.

On July 27, 2016, Central Bank served Keith with its
Initial disclosures under FED. R. CIV. P. 26(a)(1).
Keith learned that Central Bank was truthful in its claim
that it had not created a summary plan description.
Keith also learned that MetLife instructed Central Bank,
in no uncertain terms, that Central Bank, as Plan
Administrator, was responsible for drafting and
distributing the summary plan description.  The most

recent set of documents produced by Central Bank on September 14, 2016, purport to contain a Summary Plan Description. To the extent those documents are claimed to be the Plan's SPD, they are deficient and fail to meet the requirements of 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-3.[6]

Defendants argue that plaintiff's contention that she could not have filed her claim for statutory penalties under 29 U.S.C. § 1132(c) until July 27, 2016, when she received Central Bank's Initial Disclosures is misleading and disingenuous because "if Plaintiff truly thought she had a viable statutory penalty claim under § 1132(c), she had the relevant information and facts before she initially filed her lawsuit in April 2015."[7] As evidence that plaintiff had the relevant information and facts needed to assert her § 1132(c) claim against Central Bank before she filed this action in April of 2015, defendants cite (1) the ERISA provision providing that the "administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description," 29 U.S.C. § 1024(b)(1); (2) three letters written by MetLife to plaintiff's counsel dated January 28, 2014, March 11, 2014, and August 14, 2014, i.e., before this action was filed, advising plaintiff's counsel that the Plan documents, including the SPD, would have to be obtained from Central Bank; and (3) the pending motion to amend

_____

[6]Plaintiff's Motion for Leave to Amend, Docket Entry No. 22, pp. 3-6.

[7]Defendant MetLife's Response, Docket Entry No. 25, p. 9 ¶ 16.

-12-

in which plaintiff admits that only the Plan Administrator can be held liable for § 1132(c) penalties and that penalty provisions such as § 1132(c) must to be strictly construed.[8]

Plaintiff has replied to defendants' responses to her motion to amend, but has not cited any evidence that disputes defendants' assertion that she had all the relevant information and facts needed to assert her claim against Central Bank for statutory penalties under § 1132(c) before she filed her Original Complaint on April 21, 2015. Instead, plaintiff merely asserts:

> There is no undue delay in filing this Motion. Keith searched Central Bank's Initial Disclosures and realized that Central Bank wholly failed, refused and neglected to publish an SPD that satisfied Hansen [v. Continental Insurance Co., 940 F.2d 971 (5th Cir. 1991), abrogated on other grounds by CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011)]. That failure prompted the Motion to Amend. Thus there was no undue delay.[9]

Section 1132(c) authorizes statutory penalties against a plan administrator for failing to provide plan documents sought pursuant to a written request. Plaintiff argues that her review of Central Bank's initial disclosures revealed evidence that Central Bank failed to publish an SPD, but for the reasons stated in § III.B.2, below, the court concludes that plaintiff has failed to show either that Central Bank failed to publish an SPD, or that Central Bank failed to provide an SPD in response to her written request for plan documents.

---

[8]Id. at 8-9 ¶ 16 (citing Exhibit B thereto).

[9]Plaintiff's Reply, Docket Entry No. 26, p. 6.

In her motion for leave to amend, plaintiff states that she "made an Initial Request for Documents from Central Bank, the Plan Administrator of the Central Bank Welfare Plan, on January 14, 2014,"[10] plaintiff acknowledges that "[b]y operation of ERISA, Central Bank had thirty-(30) days to provide the requested documents — or February 13, 2014.  29 U.S.C. § 1132(c)."[11]  But plaintiff contends that when she filed her Original Complaint over one year later on April 21, 2015, she "could not bring a cause of action under 29 U.S.C. § 1132(c) since Central Bank led [her] into believing that MetLife, the claim administrator, was responsible for the drafting and publication of the summary plan description."[12] Plaintiff's contention that she could not have asserted her § 1132(c) claim against Central Bank when she filed her Original Complaint is belied both by the statement in her Original Complaint that Central Bank — not MetLife — was the Plan Administrator,[13] and by the statement in her motion to amend that she "recognized that most circuits have held that only the Plan Administrator could be liable for penalties under 29 U.S.C. § 1132(c)."[14]  Citing Fisher

---

[10]Plaintiff's Motion for Leave to Amend, Docket Entry No. 22, p. 3.

[11]Id.

[12]Id. at 3-4.

[13]Original Complaint, Docket Entry No. 1, p. 2 ¶ 4.

[14]Plaintiff's Motion for Leave to Amend, Docket Entry No. 22, p. 4.

v. Metropolitan Life Insurance Co., 895 F.2d 1073, 1077 (5th Cir.
1990), plaintiff argues that she delayed filing a § 1132(c) claim
against Central Bank because she "had no desire to test whether
someone other than the statutory administrator could be liable for
§ 502(c)[, i.e., § 1132(c),] penalties,"[15] since she knew that "as
a penalty provision, section 1132(c) must be strictly construed."[16]

In Fisher the plaintiff argued that the plan insurer, MetLife,
should be regarded as a de facto plan administrator because MetLife
had been delegated responsibility for administering claims.  Noting
that Fisher's argument had intuitive appeal, the Fifth Circuit
found no need to decide whether MetLife could be held liable under
§ 1132(c) as a de facto administrator because the written request
at issue, i.e., a note scribbled at the bottom of a Social Security
award certificate requesting a copy of certain policies, was not
sufficient to support a § 1132(c) claim.  Id.  Although the Fifth
Circuit left open the question of whether a life insurance company
could be regarded as a de facto plan administrator, the Fifth
Circuit neither held nor discussed whether a plan administrator
could avoid liability by delegating responsibility for providing
plan documents to an agent or claims administrator.  Thus the court
is not persuaded that the Fifth Circuit's opinion in Fisher
provides plaintiff any reason not to have included in her Original

---

[15] Id.

[16] Id.

Complaint the § 1132(c) claim that she now seeks leave to assert against Central Bank.

Because undisputed evidence shows that before filing suit plaintiff knew that Central Bank — not MetLife — was the plan administrator, plaintiff knew that she had made a written request for plan documents to Central Bank but that Central Bank had failed to provide her the SPD within 30 days as required by ERISA, and plaintiff knew that most courts construe § 1132(c) strictly to apply solely to plan administrators, the court concludes that plaintiff had all the facts needed to assert the § 1132(c) claim that she now seeks leave to assert against Central Bank before she filed her Original Complaint, but that she purposely delayed asserting that claim. Although plaintiff argues that her delay in seeking leave to file a § 1132(c) claim against Central Bank was reasonable because Central Bank misled her into believing that MetLife was responsible for providing her the SPD, plaintiff has not cited any evidence from which the court can conclude that Central Bank in fact misled her into believing that MetLife — not Central Bank — was responsible for providing her an SPD. Moreover, defendants have cited undisputed evidence in the form of three letters — all dated before this suit was filed — written by MetLife to plaintiff's counsel advising plaintiff that inquiries for plan documents — including an SPD — had to be sent to Central Bank, and that Central Bank — not MetLife — needed to provide those documents to her.

In light of undisputed evidence showing that plaintiff had all the facts needed to assert her § 1132(c) claim against Central Bank before she filed her Original Complaint, the court concludes that plaintiff has not provided any reasonable or persuasive explanation for her delay in asserting or seeking leave to assert that claim beyond September 25, 2015, the day the court entered its initial scheduling order. Because plaintiff has failed to provide any reasonable explanation for her delay in seeking leave to amend, this factor weighs against plaintiff. See <u>Southwestern Bell Telephone Co.</u>, 346 F.3d at 547 (denying leave to amend upon finding that "[movant] was aware of the contract that forms the basis of its proposed [counterclaim] months in advance of the deadline and does not offer a satisfactory explanation for its delay in seeking leave to amend"); <u>Steptoe v. JPMorgan Chase Bank NA</u>, Civil Action No. 4:11-CV-3427, 2013 WL 150305, at *1 (S.D. Tex. January 12, 2013) (assertion of unconvincing or conclusory explanations for delay in filing a motion for leave to amend more than eight months after the scheduling order deadline was sufficient cause for court to deny leave to amend for lack of good cause under Rule 16).

2.   <u>Importance of the Amendment</u>

Although neither party expressly addresses the importance of plaintiff's proposed amendment, defendants argue that granting Plaintiff's Motion for Leave to Amend will be an exercise in

-17-

futility because Central Bank provided plaintiff a valid SPD.[17]
Each defendant has attached the document that they argue serves as
the SPD to their response in opposition.[18]  Defendants argue that

> Plaintiff alleges in her Motion and in her proposed First
> Amended Complaint that through her attorney she requested
> the plan documents from Central Bank on January 14, 2014.
> (Motion, p. 3; Amended Complaint, p. 17, ¶ 72).
> Plaintiff goes on to allege that on January 17, 2014,
> Central Bank, acting through employee Judy Rogers,
> forwarded to Central Bank's attorney the "Certificate of
> Insurance" which "they refer to as the basic life plan
> summary plan description." (Amended Complaint, p. 17,
> ¶ 73).  Plaintiff admits in her proposed pleadings that
> on January 23, 2014, "the attorney for Central Bank
> forwarded the email (with attachments) that paragraph 73
> describes to Keith's attorney," which included the SPDs
> for the basic life and LTD coverages. (Amended
> Complaint, p. 17, ¶ 74).  Plaintiff claims, however, that
> the document produced for the basic life coverage is not
> the SPD.  The facts are to the contrary.[19]

Defendants argue that the "SPD submitted to Plaintiff's
counsel on January 23, 2014, is the document provided to the Plan
participants, including the deceased, John White, as the SPD,"[20] and
that "the SPD, which is also the Plan document, meets all of the
requirements of 29 U.S.C. § 1022."[21]  Defendants explain that

--------

[17]Central Bank Defendants' Response, Docket Entry No. 23,
pp. 2-3 ¶¶ 4-10; Defendant MetLife's Response, Docket Entry No. 25,
pp. 2-8 ¶¶ 2-15.

[18]See Exhibit B to Central Bank Defendants' Response, Docket
Entry No. 23-2, and Exhibit A to Defendant MetLife's Response,
Docket Entry No. 25-1.

[19]Defendant MetLife's Response, Docket Entry No. 25, p. 3 ¶ 5.

[20]Id. at 4 ¶ 8.

[21]Id. at 6 ¶ 10.

[t]his SPD was provided to Plaintiff's counsel on
January 23, 2014, and it contains all of the information
required by statute for a SPD.  The SPD sufficiently
apprises participants and beneficiaries of their rights
and obligations under the Plan (KEITH/MET 1, 4, 21-48)
and contains the following information:  the name and
type of administration of the Plan (KEITH/MET 50); the
name and address of the agent for the service of legal
process (*Id.*); the name and address of the administrator
(*Id.*); the plan's requirements respecting eligibility for
participation and benefits (KEITH/MET 19-22, 25-27, 50);
circumstances which may result in disqualification,
ineligibility, or denial or loss of benefits (KEITH/MET
27-31, 35-39); the source of financing of the plan and
the identity of any organization through which benefits
are provided (KEITH/MET 50); the date of the end of the
plan year and whether the records of the plan are kept on
a calendar, policy, or fiscal year basis (KEITH/MET 51);
the procedures to be followed in presenting claims for
benefits under the plan including the office at the
Department of Labor ["DOL"] through which participants
and beneficiaries may seek assistance or information
regarding their rights under this chapter (KEITH/MET 52-
55); the remedies available under the plan for the
redress of claims which are denied in whole or in part
(including procedures required under section 1133 of this
title)(KEITH/MET 52-54); and if the employer so elects
for purposes of complying with section 1181(f)(3)(B)(i)
of this title, the model notice applicable to the State
in which the participants and beneficiaries reside (not
applicable to life insurance benefits).[22]

Acknowledging that the document provided to the plaintiff is

not called a "Summary Plan Description," and quoting Hicks v.

Fleming Companies, Inc., 961 F.2d 537, 542 (5th Cir. 1992),

defendants argue

the Fifth Circuit has made clear, a SPD is not determined
by what it is called. . . [T]he appropriate test for
determining if a document constitutes an SPD is "whether
it contains all or substantially all categories of
information required under 29 U.S.C. § 1022(b) and the

---

[22]*Id.* at 4-5 ¶ 9.

-19-

DOL's regulations at 29 C.F.R. § 2520.102-3 for the type of benefit in question."[23]

In <u>Hicks</u> an employee had sued his employer and its parent company for wrongful denial of long-term disability benefits, claiming that he was eligible to participate in the employers' long-term disability benefits plan based on representations made in a booklet, despite the fact that he was ineligible under the terms of the master plan document. Recognizing that the terms of the booklet could govern the employee's right to the benefits if the booklet was found to be an SPD, the Fifth Circuit nevertheless affirmed the grant of summary judgment to the employers. Although the booklet included some cursory information about monthly payments under the long-term disability benefits plan, the court noted that the booklet contained none of the other information required by 29 U.S.C. § 1022(b) or the DOL regulations at 29 C.F.R. § 2520.102-03 concerning the plan's management and rules, such as (1) the name and type of administration of the plan; (2) the name and address of the person designated as agent for the service of process; (3) the source of financing of the plan and the identity of any organization through which benefits were to be provided; (4) the date and end of the plan year and whether the records of the plan were to be kept on a calendar, policy, or fiscal year basis; (5) the procedures to be followed in presenting claims for

---

[23]<u>Id.</u> at 6 ¶ 11.

benefits under the plan; and (6) the remedies available under the plan for the redress of claims denied in whole or in part nor the information required by DOL regulations alone, such as the employer identification number assigned by the Internal Revenue Service to the plan sponsor, the plan number assigned to the plan sponsor, or the so-called statement of ERISA rights. <u>Hicks</u> thus stands for the principle that a document may constitute an SPD for ERISA purposes if it contains all or substantially all categories of information required under 29 U.S.C. § 1022(b) and DOL regulations at 29 C.F.R. § 2520.102-03.

Citing <u>Rhea v. Alan Ritchey, Inc.</u>, 85 F. Supp. 3d 870, 874-75 (E.D. Tex. 2015), and <u>Adams v. UNUM Life Insurance Company of America</u>, Civil Action No. H-04-2179, 2005 WL 2030840, at *7-*8 (S.D. Tex. August 23, 2005), defendants argue that "[w]hile the document provided to Plaintiff's counsel also serves as the Plan document, there is no prohibition against the Plan document and [the] SPD being the same document."[24]  In <u>Rhea</u> the court explained that a summary plan description can constitute a formal plan document so long as no other contradictory plan document exists. 85 F. Supp. 3d at 874-75. Defendants argue that as in <u>Adams</u>, 2005 WL 2030840, at *7-*8, the certificate of insurance with ERISA information provided to plaintiff's counsel in January of 2014 is the SPD because it

_____

[24] <u>Id.</u> at 4 ¶ 7.

-21-

was obviously written for the participant, rather than the policyholder, because it explains:

> Metropolitan Life Insurance Company ("MetLife") . . . certifies that You are insured for the benefits described in this certificate, subject to the provisions of this certificate. This is a certificate issued to You under the Group Policy and it includes the terms and provisions of the Group Policy that describe Your insurance. **PLEASE READ THIS CERTIFICATE CAREFULLY.**
>
> This certificate is part of the Group Policy. The Group Policy is a contract between MetLife and the Employer and may be changed or ended without Your consent or notice to You.

(KEITH/MET 1). "You" and "Your" are defined in the certificate as "an employee who is insured under the Group Policy for the insurance described in this certificate." (KEITH/MET 24).[25]

Acknowledging that Central Bank responded to her January 14, 2014, request for plan documents by providing MetLife's Certificate of Insurance along with a document entitled Additional Information — ERISA Information, plaintiff replies that the proposed amended complaint is not an exercise in futility because her claim for penalties against Central Bank is supported by binding Fifth Circuit precedent, i.e., Hansen, 940 F.2d at 971.[26] Quoting Weaver Brothers Insurance Associates, Inc. v. Braunstein, Civil Action No. 11-5407, 2013 WL 1195529, *8 (E.D. Pa. March 25, 2013), and 2014 WL 2599929, *13-*14 (E.D. Pa. June 10, 2014), plaintiff argues that in Hansen, 940 F.2d at 981, the Fifth Circuit held:

_____

[25]Id. at 7 ¶ 12.

[26]Plaintiff's Reply, Docket Entry No. 26, pp. 2-4.

-22-

The certificate of insurance, which sets out the full terms of the policy, is no[t] part of the summary plan description. Continental confounds the *policy* with a *summary* of the policy, collapsing two distinct documents into one. By definition, a summary description of the policy does not reproduce each and every term, word for word, of the policy. Indeed, the very purpose of having a summary description of the policy is to enable the average participant in the plan to understand readily the general features of the policy, precisely so that the average participant need *not* become expert in each and every one of the requirements, provisos, conditions, and qualifications of the policy and its legal terminology. *Id*. at 981.

The reasoning of *Hansen* is persuasive here. There is a clear delineation in the booklet provided to Deborah Braunstein between the Certificate of Group Insurance and the SPD which is found toward the end of the booklet. The table of contents to the Certificate of Group Insurance does not list the SPD. (Doc. No. 1 at 76-77.) The Certificate of Group Insurance is not incorporated into the SPD — it is merely included in "this document," which is the booklet.

Thus, the only way a plan participant would know about the terms of the Plan would be by referring to another document, the Certificate of Group Insurance. The SPD itself, however, is required to provide the summary of the plan, not another document referred to in the SPD.[27]

Plaintiff argues that "[h[ere, there is a clear delineation between the Certificate and the Additional Information,"[28] because the table of contents of the Certificate does not list the Additional Information section, because the Certificate of Insurance is not incorporated into the Additional Information section, and because the Certificate of Insurance ends with the statement "THIS IS THE END OF THE CERTIFICATE. THE FOLLOWING IS

---

[27]*Id.* at 3.

[28]*Id.* at 4.

ADDITIONAL INFORMATION," plaintiff argues that under Hansen, Central Bank has not provided an adequate SPD.[29] Finally, plaintiff argues that defendants' reliance on Rhea, 85 F. Supp. 3d at 874-75, is misplaced because there "[t]he magistrate, in an opinion adopted by the District Court, found '[t]here is also nothing in the precedent before the Court that would indicate that, as a matter of law, a document titled "summary plan" cannot serve as *the* plan where there is no alternative document.'"[30]

Plaintiff's reliance on Hansen is misplaced because that case did not address whether a single document could serve as both the SPD and the plan document. Instead, Hansen involved conflicts between a plan document and the SPD given to the employees. In Hansen the Fifth Circuit held that the terms of the SPD control over inconsistent terms in the underlying plan because the statutory language of ERISA requires that SPDs be given to plan participants and that SPDs be accurate, and that an insurer could not disclaim the effect of the *SPD* by stating that all rights would be governed by the master policy. Hansen, 940 F.2d at 981-82 (citing 29 U.S.C. § 1022). Hansen preceded CIGNA, 131 S. Ct. at 1866, in which the Supreme Court held that the text of § 1132(a)(1)(B) does not authorize courts to enforce the terms of a plan summary because that provision only authorizes enforcement

---

[29]Id.

[30]Id. at 6.

of the "terms of the plan." Id. at 1877.  The Fifth Circuit has since recognized that the Supreme Court's CIGNA opinion changes its case law to the extent that the plan text ultimately controls the administrator's obligations in a § 1132(a)(1)(B) action, but that CIGNA does not disturb the Fifth Circuit's prior holdings that (1) ambiguous plan language be given a meaning as close as possible to what is said in the plan summary, and (2) plan summaries be interpreted in light of the applicable statutes and regulations. Koehler v. Aetna Health Inc., 683 F.3d 182, 189 (5th Cir. 2012) (citing McCall v. Burlington Northern/Santa Fe Co., 237 F.3d 506, 512 (5th Cir. 2000), cert. denied, 122 S. Ct. 57 (2001), and Rhorer v. Raytheon Engineers and Constructors, Inc., 181 F.3d 634, 641-42 (5th Cir. 1999)).

Plaintiff's reliance on Braunstein, 2013 WL 1195529, *8 and 2014 WL 2599929, *13-*14 is similarly misplaced because it is factually distinguishable from this case.  In Braunstein the booklet produced by the plan administrator contained two sections: a long section titled "Certificate of Insurance" and a short section titled "Summary Plan Description." Braunstein, 2013 WL 1195529, at *7-*9; 2014 WL 2599929, at *3-*4.  The court found that the two sections were two separate documents and that the section titled "Summary Plan Description" lacked the basic information that an SPD is required to give a participant. Id. at 2014 WL 2599929, at *4.  Here, defendants have cited undisputed evidence that the Plan document, which they contend is also the

-25-

SPD, meets all of the requirements for SPDs set forth in 29 U.S.C. § 1022, that it was provided to Plan participants as the SPD, and that it was timely provided to plaintiff's counsel on January 23, 2014, <u>i.e.</u>, within thirty (30) days of plaintiff's written request. Plaintiff contends that the document provided to her counsel as the SPD is not an adequate SPD,[31] but has failed to show that the document lacks any of the information that ERISA requires to be included in an SPD.

Plaintiff's argument that the § 1132(c) claim she seeks to assert against Central Bank is not futile is based on the fact that the document at issue is not titled "Summary Plan Description." However, as the Fifth Circuit made clear in <u>Hicks</u>, 961 F.2d at 542, the appropriate test for determining if a document constitutes an SPD is not whether it is called an SPD but, instead, whether "it contains all or substantially all categories of information required under 29 U.S.C. § 1022(b) and the DOL's regulations at 29 C.F.R. § 2520.102-3 for the type of benefit in question." Plaintiff has not offered any evidence capable of contradicting defendants' argument that the document at issue contains all or substantially all categories of information required for SPDs. Plaintiff has argued that defendants' reliance on <u>Rhea</u>, 85 F. Supp. 3d at 874-75, is misplaced because the court there held only that an SPD can constitute a formal plan document consistent

---

[31]<u>Id.</u> at 4.

with the holding of <u>CIGNA</u>, 131 S. Ct. 1866, but "did not address whether the one document rule applied if, as here, Defendants advance the claim that the plan document can be the SPD."[32]   But plaintiff has not cited any authority holding to the contrary, <u>i.e.</u>, holding that the plan document cannot serve as the SPD. Moreover, in <u>Koehler</u>, 683 F.3d at 185, the Fifth Circuit analyzed just such a document.   In <u>Koehler</u> the defendant, Aetna, produced a copy of the plan's Certificate of Coverage ("COC") in response to Koehler's request for a copy of the SPD applicable to her claim. The Fifth Circuit stated that "although a plan summary is a separate document from the plan itself, in this case the summary's text is simply a verbatim copy of the underlying plan provisions." <u>Id.</u> at 185.   <u>See also</u> <u>id.</u> at 189 & n.11 ("Typically, the plan summary is not a verbatim copy of the text of the plan itself."). <u>See also</u> <u>Dudley v. Sedgwick Claims Management Services, Inc.</u>, 495 F. App'x 470, 471 n.1 (5th Cir. 2012) ("Summary plan descriptions ('SPD') are required by ERISA, 29 U.S.C. § 1022, and **are often a separate document**, used to 'apprise [the plan's] participants and beneficiaries of their rights and obligations under the plan.'") (emphasis added).   Absent any authority holding that a plan document cannot serve as an SPD, and absent any evidence that the plan document produced as the SPD in this case does not contain all or substantially all of the information required to be included in

_____

[32]<u>Id.</u> at 6.

an SPD, the court concludes that the § 1132(c) claim that plaintiff seeks to assert against Central Bank would be futile because undisputed evidence shows that the documents that Central Bank timely produced in response to plaintiff's written request included the relevant SPD.  Because the court concludes that the claim the plaintiff seeks leave to add would be futile, the court concludes that claim is not important.  See <u>Filgueira v. U.S. Bank National Association</u>, 734 F.3d 420, 423 (5th Cir. 2013).  Accordingly, the court concludes that this factor weighs in favor of defendants.

3.    <u>Potential Prejudice to Defendants and Availability of a Continuance to Cure Prejudice</u>

The addition of a new but futile claim for relief at this late date — over a-year-and-a-half after the Original Complaint was filed — will needlessly extend the litigation and cause the defendants additional expense.  Absent any reasonable explanation from plaintiff for the cause of her delay in asserting the proposed new § 1132(c) claim against Central Bank for statutory penalties or any reasonable basis for the court to conclude that the proposed new claim would not be futile, the court concludes that allowing the proposed amendment will not only require the court to abandon long-established deadlines, but will also delay the trial and prejudice the defendants.  Accordingly, the court concludes that the third and fourth factors weigh against plaintiff's motion for leave to file an amended complaint.  See <u>Southwestern Bell</u>, 346

-28-

F.3d at 547 (Courts have "broad discretion to preserve the integrity and purpose of the pretrial order.").

4.   Conclusions

Plaintiff fails to show good cause for her delay in seeking leave to amend.  Plaintiff's only reason for failing to assert her proposed § 1132(c) claim either in her Original Complaint or by the time the court entered its initial scheduling order on September 25, 2015, is that Central Bank led her into believing that MetLife, the claim administrator, was responsible for the drafting and publication of the SPD.  Before filing her Original Complaint, plaintiff did, however, know that Central Bank — not MetLife — was the Plan Administrator; knew that she had submitted a written request for plan documents to Central Bank; and knew that the documents she received in response to that request did not include a document titled "SPD."  Plaintiff also acknowledges that § 1132(c) imposes liability on the plan administrator not the claims administrator, and that most courts strictly construe § 1132(c) to allow penalties solely against the plan administrator. Despite this knowledge, plaintiff waited until September 19, 2016 -- less than two months before the November 30, 2016, deadline for completion of discovery -- to seek leave to amend.  Plaintiff has failed to cite any evidence from which the court could conclude that she reasonably delayed beyond either September 25, 2015, the date the court entered its first scheduling order in this case, or

September 1, 2016, the date the court entered its second scheduling order, to seek leave to file her proposed § 1132(c) claim. In addition to failing to explain her delay, plaintiff fails to demonstrate that the proposed claim would not be futile, or that allowing the proposed amendment at this late date would not unduly prejudice the defendants. The court concludes therefore that plaintiff has failed to establish good cause as required by Rule 16(b)(4) to amend pleadings once the deadline for doing so established by the court's scheduling order has expired. See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

## IV.  Conclusions and Order

For the reasons stated in § III.B, above, the court concludes that plaintiff has failed to establish good cause as required by Rule 16(b)(4) to amend pleadings once the deadline for doing so established by the court's scheduling order has expired. Even if the court were to conclude that plaintiff had established good cause for delaying her motion seeking leave to amend, the court would deny Plaintiff's Motion for Leave to Amend under Rule 15(a)'s standards because uncontroverted evidence establishes that the plaintiff was well aware of the facts on which her proposed amendment is based long before she filed her Original Complaint, and because the claim that plaintiff seeks leave to amend would be futile. See Lozano v. Ocwen Fed. Bank, FSB, 489 F.3d 636, 644 (5th

Cir. 2007) (affirming the district court's denial of leave to amend under Rule 15 because the plaintiffs "had been aware of the factual underpinnings of the [new] fraud claim for some time, and . . . they had not been diligent in pursuing the claim").  Accordingly, Plaintiff's Motion for Leave Pursuant to Fed. R. Civ. P. 15(c)(1)(B) to File Plaintiff's First Amended Complaint (Docket Entry No. 22) is **DENIED**.

    **SIGNED** at Houston, Texas, on this 30th day of November, 2016.

                                        SIM LAKE
                            UNITED STATES DISTRICT JUDGE