United States District Court
Southern District of Texas
**ENTERED**
March 15, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA KEITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-15-1030 |
| METROPOLITAN LIFE INSURANCE | § | |
| COMPANY, CENTRAL BANK, and | § | |
| CENTRAL BANK WELFARE BENEFIT | § | |
| PLAN, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Linda Keith, has brought suit against defendants, Metropolitan Life Insurance Company ("MetLife"), Central Bank, and Central Bank Welfare Benefit Plan ("Central Bank Defendants"), for breach of fiduciary duty and seeking equitable relief under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. Pending before the court are: Defendant Metropolitan Life Insurance Company's Motion for Summary Judgment and Brief in Support ("MetLife's Motion for Summary Judgment") (Docket Entry No. 35); Defendants Central Bank and Central Bank Welfare Benefit Plan's Motion for Summary Judgment and Brief in Support ("Central Bank Defendants' Motion for Summary Judgment") (Docket Entry No. 37); and Plaintiff's Response and Cross-Motion to Motions for Summary Judgment of Defendants Central Bank, Central

Bank Welfare Benefit Plan, and Metropolitan Life Insurance Company ("Plaintiff's Response") (Docket Entry No. 38). For the reasons explained below, all of the motions will be denied.

## I.  Factual and Procedural Background[1]

John P. White served as Vice President of Central Bank for Business Development from 2007 until 2013.[2]  While employed by Central Bank, White enrolled in a group insurance program offered by his employer that provided life, accidental death and dismemberment, and long-term disability insurance through policies issued by MetLife. White named Keith as the beneficiary of his life insurance policy.[3] Central Bank made premium payments for the group insurance policies as part of White's compensation.[4] Toward the end of his employment White was diagnosed with monoplegia and amyotrophic lateral sclerosis (ALS), commonly known as Lou Gehrig's Disease.[5] March 5, 2013, was White's last day at work.[6]  The following day White began a leave of absence under the Family

---

[1]See Statement of Facts, Original Complaint, Docket Entry No. 1, pp. 2-9 ¶¶ 8-42.

[2]Declaration of Judith Gorham Rogers, Exhibit A to Central Bank Defendants' Motion for Summary Judgment, Docket Entry No. 37-1, ¶¶ 1, 34.

[3]Id. at ¶ 11.

[4]Id. at ¶ 2.

[5]Id. at ¶ 4.

[6]Id. at ¶ 21.

Medical Leave Act (FMLA).[7]  During White's leave of absence Central Bank continued to make premium payments for White's group insurance coverages.[8]

While on FMLA leave White applied for long-term disability benefits under the MetLife policy.[9]  During an exit interview on March 19, 2013, White reaffirmed his desires (1) not to make any changes to his insurance elections for plan year 2013-2014, and (2) to keep Keith as the beneficiary for his life insurance policy.[10]  On March 26, 2013, MetLife approved White's application for long-term disability and advised White that his benefits would begin on June 6, 2013, following a three-month elimination period.[11]

On April 9, 2013, MetLife internally generated a claim for continuation of group life insurance for White.[12]  Central Bank was not notified of the claim.[13,14]  On May 9, 2013, MetLife wrote a letter ("the May 9th letter") to White acknowledging receipt of the

_____

[7]Id.

[8]Id.

[9]Id. at ¶ 24.

[10]Id. at ¶ 25.

[11]Id. at ¶ 31.

[12]MetLife Claim Comments List, Exhibit B-2 to Central Bank Defendants' Motion for Summary Judgment, Docket Entry No. 37-6, p. 14.

[13]Rogers Declaration, Exhibit A to Central Bank Defendants' Motion for Summary Judgment, Docket Entry No. 37-1, ¶ 32.

[14]None of the parties have provided the court with a copy of the April 9, 2013, claim as part of the summary judgment briefing.

April 9, 2013, claim.[15]  MetLife's May 9, 2013, letter stated that the group life insurance plan "includes a provision that continues your coverage while you are not actively at work," advised White that a representative "may be in contact" and that "[n]o action is required from you at this time."[16]  On May 21, 2013, MetLife again wrote to White ("the May 21st letter") stating that his insurance plan required him to be totally disabled continuously for nine consecutive months before he would be eligible for continuation of group life insurance coverage during his absence from work.[17]  The May 21st letter also stated that MetLife would defer making a decision on White's claim for continuation of group life insurance until December 9, 2013, when the nine-month waiting period expired.[18]  Neither the May 9th nor the May 21st letter mentioned that there were other means of maintaining continuation of life insurance coverage, or that White was not qualified for continuation under the provision with the nine-month waiting period because he had not become totally disabled before reaching the age of 60.

---

[15]Exhibit 8 to Plaintiff's Response, Docket Entry No. 38-8, p. 1.

[16]Id.

[17]Id. at 2.

[18]Id.

On May 28, 2013, Judith Rogers, Senior Vice President/Human Resources Manager for Central Bank, called MetLife to "get an understanding of the meaning" of the May 21st letter and was told that White would need to convert his life insurance to an individual policy in order to maintain coverage during the waiting period.[19]  Central Bank made its last premium payment for White on June 1, 2013.[20] White was formally terminated from his position with Central Bank at the end of his FMLA leave on June 5, 2013.[21] Neither Central Bank nor MetLife gave White any notice that premium payments on his group coverage would cease on June 1, 2013, that the July 1, 2013, payment was due or past due, or that White had a right to move or convert his life insurance coverage to an individual policy following his termination from Central Bank.

White was found dead on September 14, 2013.[22]  Shortly after, Keith notified MetLife of White's death and MetLife instructed her to submit a death claim.[23]  On November 25, 2013, MetLife denied

---

[19]Rogers Declaration, Exhibit A to Central Bank Defendants' Motion for Summary Judgment, Docket Entry No. 37-1, ¶ 36.

[20]Id. at ¶ 34.

[21]Id.

[22]Certification of Vital Record, Exhibit A-41 to Central Bank Defendants' Motion for Summary Judgment, Docket Entry No. 37-5, p. 43.

[23]Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 37.

Keith's claim for life insurance benefits.[24]   Keith appealed the
denial of her claim.[25]   On May 1, 2014, MetLife denied Keith's
appeal because White's coverage ended on June 30, 2013, following
the last premium payment on June 1, 2013, and because White was not
eligible for continuation of his insurance since he was 60 years
old when he became disabled.[26]   Plaintiff filed her Original
Complaint against defendants on April 21, 2015.

## II.   <u>Standards of Review</u>

**A.   Summary Judgment**

Summary judgment is appropriate if the movant establishes that
there is no genuine dispute about any material fact and the law
entitles it to judgment.   Fed. R. Civ. P. 56(a).   Disputes about
material facts are "genuine" if the evidence is such that a
reasonable trier of fact could return a verdict for the nonmoving
party.   <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511
(1986).   A party moving for summary judgment "must 'demonstrate the

---

[24]Letter from MetLife to Linda Keith (Nov. 25, 2013), Exhibit
A to MetLife's Motion for Summary Judgment, Docket Entry No. 36-1,
pp. 36-37.

[25]Letter from James C. Plummer to MetLife Group Life Claim
Appeal Committee (April 10, 2014), Exhibit B-4 to Central Bank
Defendants' Motion for Summary Judgment, Docket Entry No. 37-6, pp.
21-24.

[26]Letter from MetLife to Linda Keith (May 1, 2014), Exhibit A
to MetLife's Motion for Summary Judgment, Docket Entry No. 36-1,
pp. 38-40.

absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>) (quoting <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986)).   If the moving party meets this burden, the nonmovant must go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial.   <u>Id.</u>   In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000).   "Standard summary judgment rules control in ERISA cases." <u>Green v. Life Insurance Company of North America</u>, 754 F.3d 324, 329 (5th Cir. 2014) (internal quotation marks and citation omitted).

**B.   ERISA**

An individual plan beneficiary may bring suit for equitable relief for breach of a fiduciary duty under ERISA's so-called "catch-all" provision, which provides:

> A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3).   To recover "appropriate equitable relief," a plaintiff "must establish that the defendant is (a) a plan

fiduciary, (b) has breached its fiduciary duties under ERISA, (c) that such a breach caused the plaintiff's injury, and (d) that the equitable relief sought is indeed appropriate." <u>Shonowo v. Transocean Offshore Deepwater, Inc.</u>, Civil Action No. 4:10-CV-1500, 2011 WL 3418405, at *5 (S.D. Tex. Aug. 3, 2011) (citing <u>Brosted v. Unum Life Insurance Company of America</u>, 421 F.3d 459, 465 (7th Cir. 2005) (other citations omitted). ERISA requires fiduciaries to discharge their duties with respect to a plan "in accordance with the documents and instruments governing the plan" insofar as those documents and instruments are consistent with other ERISA provisions. 29 U.S.C. § 1104(a)(1)(D).

The threshold question for breach of ERISA fiduciary duty "is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." <u>Pegram v. Herdrich</u>, 120 S. Ct. 2143, 2152-53 (2000). "[T]he issue of ERISA fiduciary status is a mixed question of fact and law." <u>Reich v. Lancaster</u>, 55 F.3d 1034, 1044 (5th Cir. 1995). Under ERISA, one is a fiduciary to the extent that:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or

discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In short, "[a] fiduciary within the meaning of ERISA must be someone acting in the capacity of manager [or] administrator." <u>Pegram</u>, 120 S. Ct. at 2151. But merely performing administrative duties is not treated as a fiduciary function. <u>See</u> 29 C.F.R. § 2509.75-8; <u>Walker v. Federal Express Corp.</u>, 492 Fed. App'x 559, 565 (6th Cir. 2012); <u>Barrs v. Lockheed Martin Corp.</u>, 287 F.3d 202, 207 (1st Cir. 2002); <u>Plumb v. Fluid Pump Serv., Inc.</u>, 124 F.3d 849, 854-55 (7th Cir. 1997).

### III. <u>Analysis</u>

**A. MetLife's Motion**

MetLife argues that, as claim administrator, it had no fiduciary duty to notify White of his options to maintain his life insurance. It is undisputed that MetLife had no routine obligation to notify plan participants of their options upon termination. But Plaintiff argues that MetLife's fiduciary obligations stem from facts specific to this case. First, Plaintiff argues that MetLife's knowledge of White's condition gave rise to further obligations. Second, Plaintiff argues that MetLife acted as a fiduciary when initiating a claim for continuation of group life insurance on White's behalf for which it knew White was ineligible. Plaintiff further alleges that MetLife breached its fiduciary duty by sending the May 9th and May 21st letters that allegedly misled

White about what was required to maintain his life insurance coverage.

Both MetLife and Plaintiff rely on <u>Brenner v. Metropolitan Life Insurance Co.</u>, Civil Action No. 11-12096, 2015 WL 1307394 (D. Mass. Mar. 23, 2015). The plaintiff in <u>Brenner</u> sued both her late husband's employer and MetLife for breach of fiduciary duty after her claim for life insurance benefits was denied. <u>Id.</u> at *4. The plaintiff was not aware that her husband's coverage under the employer's group plan ended nine months after he ceased actively working. <u>Id.</u> at *3. Neither the employer nor MetLife notified the plaintiff or her husband of the pending termination of coverage or of their ability to convert to an individual plan. <u>Id.</u> The employer in <u>Brenner</u> was the plan administrator. <u>Id.</u> at *9. The court found that MetLife had no routine duty to provide notice that the group coverage was ending or of the option to convert. <u>Id.</u> at *10-11. The plaintiff argued that MetLife should have sent her a copy of the plan or the notice of conversion option because her husband's condition left him "paralyzed, unresponsive, and unable to speak or write." <u>Id.</u> at *3, *9. Without deciding whether the plaintiff's argument was correct, the court held that the plaintiff had not shown that such a duty would rise above the level of a nonfiduciary, ministerial duty. <u>Id.</u> at *9.

MetLife cites <u>Brenner</u> in support of its position that it had no fiduciary duty to notify White that Central Bank had ceased

making premium payments on his behalf or that he had the option to convert his plan. Plaintiff points out that the court in <u>Brenner</u> discussed at length MetLife's ignorance of the decedent's condition and argues that MetLife's knowledge of White's condition, by contrast, "charge[s] MetLife with a greater fiduciary responsibility."[27] Plaintiff does not, however, address whether any duty to notify would be fiduciary or merely ministerial in nature. The court is persuaded by the reasoning in <u>Brenner</u> that any duty MetLife might have had to notify either White or Keith would be nonfiduciary and ministerial.

Plaintiff argues in the alternative that MetLife acted as a fiduciary by filing a claim on White's behalf. Plaintiff relies on the following language from a Fifth Circuit opinion:

> And we do not necessarily disagree with the implication that if and when a plan administrator thus elects to act as a Good Samaritan and -- without prior inquiry from the participant -- gratuitously communicate with a plan participant about [a past-due premium], the administrator must do so in a manner calculated to avoid confusion and misunderstanding, whether by omission or commission.

<u>Switzer v. Wal-Mart Stores, Inc.</u>, 52 F.3d 1294, 1298-1299 (5th Cir. 1995). MetLife argues that <u>Switzer</u> involved a plan administrator, as opposed to a claim administrator, and that, as claim administrator, MetLife "did not misrepresent any terms of the Plan to White and because it was never contacted by White, it had no

---

[27]Plaintiff's Response, Docket Entry No. 38, p. 18.

reason to believe that its letters misled White in any way."[28]  But MetLife does not adequately address Plaintiff's argument that it acted as a fiduciary by filing the claim in the first place.  Nor is the court convinced that, as a matter of law, the letters were neither confusing nor misleading.

The fact that Rogers, Central Bank's Senior Vice President/Human Resources Manager, called MetLife for clarification after receiving the May 21st letter is evidence that the letter was unclear.[29]  And if Rogers could not understand it in her capacity as a human resources professional, White could easily have been confused or misled by the letter.  The court concludes that there are genuine issues of material fact as to whether MetLife acted as a fiduciary and whether it breached a fiduciary duty to communicate in a manner calculated to avoid confusion and misunderstanding.

MetLife also argues that Plaintiff has provided no evidence of actual harm.  But Plaintiff has shown that White named her as his beneficiary and affirmed that choice when given the opportunity.  White never expressed an intent to terminate or otherwise change his coverage.  A reasonable trier of fact could therefore infer

---

[28]Defendant Metropolitan Life Insurance Company's Response to Plaintiff's Cross-Motion for Summary Judgment ("MetLife's Response"), Docket Entry No. 45, p. 6.

[29]MetLife Claim Comments List, Exhibit 8 to Plaintiff's Response, Docket Entry No. 38-8, p. 6; Rogers Declaration, Exhibit A to Central Bank Defendants' Motion for Summary Judgment, Docket Entry No. 37-1, pp. 9-10, ¶ 36.

that White would have acted to maintain his coverage but for the letters from MetLife indicating that an existing claim was pending. Because Plaintiff has raised a genuine issue of material fact as to each element of her breach of fiduciary duty claim, MetLife is not entitled to judgment as a matter of law.

## B.   Central Bank Defendants' Motion

Central Bank, as plan administrator, was undisputedly a fiduciary under the Plan.  Central Bank argues that in the absence of a specific employee-initiated inquiry it had no fiduciary duty to notify White of his option to convert his plan and that, at any rate, he was made aware of those options upon receipt of the summary plan description.[30]  Plaintiff argues that the Central Bank was required to provide notice in writing of White's conversion option at the time his employment terminated and that failure to do so was a breach of fiduciary duty.

Plan administrators ordinarily owe no fiduciary duty to participants or beneficiaries to explain plan terms to them or to confirm that they understand the terms.  But the facts of this case are not ordinary.  Rogers was aware of White's condition and

---

[30]Plaintiff's objection to referencing the documents made available to White as a "summary plan description" because they are not so titled has no merit.  Nothing in 29 U.S.C.A. § 1022, which sets out the requirements for summary plan descriptions, requires that they be titled as such, and Plaintiff cites no other law in support of her objection.

actively involved in White's claim process.[31]   MetLife's records indicate that on March 20, 2013, Rogers instructed MetLife not to call White because of his condition.[32]   The record also reflects that White contacted MetLife on May 28, 2013, after being copied on the May 21st letter.[33]   A MetLife representative described the call as follows:

> Judy at ER called regarding deferral letter rec'd.  She said EE will be terminated soon and wants to know if EE would convert if he can have waiver.  I explained that he would need to convert to keep cov'g until waiver decision is made[.]   She understood.[34]

Rogers called to "get an understanding of the meaning of the letter," but there is no evidence that she provided the information to White.[35]

A reasonable juror could find that Rogers' actions, although gratuitous, were the actions of a fiduciary.   If so, Rogers had a duty to act prudently avoid misunderstandings and confusion.   A reasonable juror could find that her failure to communicate the

---

[31]<u>See</u> MetLife Print Claim Activity, Corrected Exhibit to Plaintiff's Response, Docket Entry No. 41-2.

[32]<u>Id.</u> at p. 9 (KEITH/MET 00403).

[33]MetLife Claim Comments List, Exhibit 8 to Plaintiff's Response, Docket Entry No. 38-8, p. 6; Rogers Declaration, Exhibit A to Central Bank Defendants' Motion for Summary Judgment, Docket Entry No. 37-1, pp. 9-10, ¶ 36.

[34]MetLife Print Claim Activity, Exhibit 6 to Plaintiff's Response, Docket Entry No. 38-6, p. 6.

[35]Rogers Declaration, Exhibit A to Central Bank Defendants' Motion for Summary Judgment, Docket Entry No. 37-1, pp. 9-10, ¶ 36.

information she received from MetLife to White, despite her own uncertainty as to the meaning of the May 21st letter, was a breach of that duty.  Finally, a reasonable trier of fact could find that White failed to take steps to maintain White's coverage because of his own misunderstanding or confusion, resulting in a loss to Plaintiff as a beneficiary.  Central Bank is therefore not entitled to summary judgment.

## C.    Plaintiff's Motion

Plaintiff's Response raises genuine issues of material fact as to each of the elements of her claim but fails prove those elements as a matter of law.  Even if the trier of fact were to find that MetLife and the Central Bank Defendants breached their fiduciary duties, Plaintiff must prove that by doing so defendants caused her injury.  A reasonable trier of fact could conclude that White was ignorant of or confused about his options.  A reasonable trier of fact could also conclude, however, that White never intended to pay for life insurance out of his own pocket and would not have converted his policy regardless of the actions of MetLife or the Central Bank Defendants.  Thus, although White's actions raise a genuine issue of material fact as to causation, they do not establish it as a matter of law.  Plaintiff is therefore not entitled to summary judgment.

## IV.   <u>Conclusions and Order</u>

For the reasons stated above the court concludes that the parties' contentions raise several genuine issues of material fact which can only be fully developed at trial through the presentation of evidence and testimony.  Accordingly, Defendant Metropolitan Life Insurance Company's Motion for Summary Judgment and Brief in Support (Docket Entry No. 35), Defendants Central Bank and Central Bank Welfare Benefit Plan's Motion for Summary Judgment and Brief in Support (Docket Entry No. 37), and Plaintiff's Response and Cross-Motion to Motions for Summary Judgment of Defendants Central Bank, Central Bank Welfare Benefit Plan, and Metropolitan Life Insurance Company (Docket Entry No. 38) are **DENIED**.  Docket Call will be held on April 14, 2017, at 03:00 p.m.

**SIGNED** at Houston, Texas, on this 15th day of March, 2017.

SIM LAKE

UNITED STATES DISTRICT JUDGE